SCHOTT, Judge
(dissenting).
In my opinion the judgment against defendant Loeb should be reversed because plaintiff failed to prove its case against him for purchases of aviation fuel by one J. Riedl.
Plaintiff’s original petition sought a joint and solidary judgment against Loeb together with First Management Corporation and Robert Welch in the amount of $2217.10. Plaintiff, at the outset of its case, called Loeb for cross examination and sought to establish that the affairs of the three defendants were so intermingled and intertwined that the liability of any would be the liability of all with respect to the purchases from plaintiff. Admissions by Loeb were sought to establish that Loeb was at all times personally involved in the use of the aircraft or in the employment of the pilots, or that the pilots were authorized tO' use his personal credit cards for the purchases. No such admissions were made, but Loeb’s testimony was so evasive, equivocal and vague that the trial judge was prompted to make the observation quoted in the majority opinion.
At this point plaintiff called Welch as a witness and he was able to shed some light on the relationship among the parties, the ownership of the aircraft, employment status of the pilots and the use by the pilots of credit cards which had been issued to the three entities. It developed that Welch was in the construction business and operated through two partnerships composed of himself and Mrs. Loeb. First Management Corporation performed administrative services such as bookkeeping for these operations. Welch had a pilot named Smith but J. Riedl never flew for Welch. Although not entirely clear, it seems that Riedl was employed by First Management and there seems no doubt that both Smith and Riedl were authorized to make purchases for First Management. There were two aircraft involved, one a Beech Baron under lease to Welch and Loeb, and the other a Mitsuibishi.
Plaintiff then produced the testimony of its office manager and bookkeeper, Eugene Caire, who identified three stacks of charge tickets for gasoline, one in the name of Robert B. Welch and Associates, a second in the name of First Management Corporation, and a third in the name of H. S. Loeb, totaling $546.94, $678.25 and $1465.44 respectively. He explained that on each card was the number of the airplane into which the fuel was placed, and that the Beech Baron with the number 1672W used 100 octane fuel while the Mit- *685 suibishi having the number 200H. took jet fuel as well as kerosene. The tickets show that those charged to Welch invariably were for 100 octane fuel pumped into the Beech Baron. Most of those charged to First Management Corporation were for the Mitsuibishi, with two exceptions for the Beech Baron and one exception for an unidentified aircraft. All of the tickets charged to Loeb were for the Mitsuibishi with one isolated exception, this being an unidentified aircraft. This witness testified that it was a matter of routine that when the pilot came in his airplane would be fueled, and depending upon which airplane it was and what the pilot said the charge was made accordingly. The charges to Loeb personally were all signed by J. Riedl, and in response to the question as to why this was done, Caire said, “because he was the pilot of the aircraft over a period of time.” At this point the trial judge was prompted to make the following statement:
“I will conclude that a fellow who is entrusted with an airplane to fly for a company has inherent authority to purchase necessary gas for that company and to bind that company as an agent- and if he uses the name of a principal of that company I’m going to conclude, in the circumstances of this case that he had the authority to- do so. He was clothed with the authority to bind the corporation or the principals and I would infer from the circumstances that he had that authority and that the plaintiff relied on his apparent authority and extended credit to the principal this pilot chose to list on the particular purchase slip.”
Caire was asked who authorized his company to make charges to the different credit cards and he answered that he did not know, and that “it’s a matter of record somewhere.” At the conclusion of this witness’ testimony the three stacks of cards were offered in evidence over the objection of the defendant Loeb, and in response to an invitation from the judge, plaintiff’s attorney moved to amend his petition so as to convert it into a claim against the three entities for each individual amount as opposed to the lump sum originally claimed from all three.
When recalled as a witness by his attorney, Loeb testified that he never authorized Riedl to charge anything to him personally. He had originally said that some of the flights could have been made for him personally, but there was absolutely no connection made between that admission and the particular charges comprising the amount of plaintiff’s claim. When confronted with these tickets Loeb categorically denied having given Riedl authority to charge the purchases to his personal account.
The question before us is whether plaintiff established its case against Loeb personally for these purchases by Riedl. The evidence is uncontradicted that the plane for which the purchases were made was the Mitsuibishi which was owned and oper-tated by First Management Corporation and not by Loeb personally and apparently, Riedl was First Management’s employee, not Loeb’s. Plaintiff changed the entire theory of its case in midstream, having started out to show that these three entities were the same and that all of the charges were their joint responsibility and then attempting to isolate a batch of the charges as Loeb’s personal account. The only thing that connects Loeb with the account is the fact that a credit card number, supposedly Loeb’s, appears on these invoices. But the record is barren of any testimony to prove that this in fact was the number of Loeb’s card or that J. Riedl had authority to use Loeb’s personal number if in fact it was his.
The trial judge did not decide this case on the basis of the credit card number. His stated reason for the judgment was the fact that the man was buying fuel for an airplane whose owner should be responsible, but Loeb personally did not own the *686 Mitsuibishi for which all of these purchases were made.
Finally, there is no explanation whatsoever in this record as to why J. Riedl was never called as a witness by plaintiff and why plaintiff did not produce its records which Caire said authorized Riedl to make charges to Loeb’s personal account. Plaintiff’s failure to produce Riedl and the records should operate as a presumption that this evidence would have been unfavorable to plaintiff’s case.
The burden was on the plaintiff to establish the purchases made by J. Riedl were made in his capacity as an agent for defendant Loeb as opposed to First Management Corporation. There is no evidence in the record to this effect. The judgment against Loeb can possibly be explained by the fact that he alienated the trial judge at the outset by failing to respond to the questions put to him truthfully and without equivocation, but Loeb’s lack of credibility does not relieve plaintiff of its burden to prove its case.
I would reverse the judgment of the trial court and respectfully dissent from the opinion of my colleagues.